# Illinois Official Reports

## Appellate Court

*Pedersen v. Village of Hoffman Estates*, 2014 IL App (1st) 123402

| | |
|---|---|
| Appellate Court Caption | ALAN R. PEDERSEN and KAREN PEDERSEN, Plaintiffs-Appellants, v. THE VILLAGE OF HOFFMAN ESTATES and JAMES H. NORRIS, Village Manager, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-3402 |
| Filed<br>Rehearing denied | March 31, 2014<br>May 8, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Subject to review by a common law writ of *certiorari*, defendant home rule village had authority to establish administrative procedures for resolving claims under the Public Safety Employee Benefits Act, including claims for continuing health coverage benefits when an employee is injured "in response to what is reasonably believed to be an emergency," and in plaintiff firefighter's case, the denial of benefits was clearly erroneous, since the injury plaintiff suffered, while responding to a tanker truck fire on a toll road after the fire was extinguished and he was cleaning the scene when the siren on a nearby fire engine activated accidentally and injured plaintiff's ears, was within the scope of a response to an emergency for purposes of the Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CH-28609; the Hon. Kathleen G. Kennedy, Judge, presiding. |
| Judgment | Circuit court affirmed in part and reversed in part; defendants' decision set aside. |

Counsel on       Thomas W. Duda, of Law Offices of Thomas W. Duda, of Arlington
Appeal           Heights, for appellants.

                 Arthur L. Janura, Hal R. Morris, Jenifer J. Caracciolo, and Elizabeth
                 A. Thompson, all of Arnstein & Lehr LLP, of Chicago, for appellees.

                 Brian D. Day and Roger Huebner, both of Illinois Municipal League,
                 of Springfield, *amicus curiae*.

Panel            JUSTICE REYES delivered the judgment of the court, with opinion.
                 Presiding Justice Rochford and Justice Lampkin concurred in the
                 judgment and opinion.

## OPINION

¶ 1    Plaintiff Alan R. Pedersen (Pedersen) was injured in the line of duty as a firefighter for defendant Village of Hoffman Estates (Village) and sought continuing health coverage benefits under section 10 of the Public Safety Employee Benefits Act (Act) (820 ILCS 320/10 (West 2006)). Defendant Village manager James H. Norris (Norris), after a hearing, denied the claim for benefits.

¶ 2    Pedersen and his wife, plaintiff Karen Pedersen (Karen) then filed suit in the circuit court of Cook County, challenging the denial of benefits under the Act. Plaintiffs' first amended complaint contained three counts, seeking: (I) a declaratory judgment of their rights under the Act; (II) a declaration that the village ordinance creating a procedure for determining claims under the Act was contrary to the Act and unconstitutional; and (III) administrative review of the decision denying benefits under the Act. Plaintiffs now appeal orders of the circuit court granting partial summary judgment in favor of defendants on counts I and II and affirming the decision to deny benefits challenged by count III after recasting it as seeking a common law writ of *certiorari*. For the following reasons, we affirm the order of the circuit court granting partial summary judgment in favor of defendants on counts I and II, reverse the order of the circuit court affirming defendants' decision denying plaintiffs' claims on count III, and set aside defendants' decision denying benefits under the Act.

¶ 3                              BACKGROUND

¶ 4    The record of the hearing before the Village discloses the following facts. During an 18-month period in 1966-67, prior to his employment with the Village, Pedersen was employed by Continental Airlines, placing food aboard airplanes at O'Hare International

Airport. Pedersen was required to wear protective hearing equipment when he worked at the airport. Pedersen was employed by the Village as a firefighter and emergency medical technician beginning in October 1976. Pedersen also was exposed to loud, industrial noise in the course of fulfilling his job responsibilities as a firefighter.

¶ 5 In the course of his duties, Pedersen had an annual physical examination by doctors associated with St. Alexius Occupational Health. In October 2002, Pedersen was alerted to a "threshold shift" in his hearing during his annual physical.[1] In May 2003, following examinations at the Bell Hearing Center and a physician for the Village, Pedersen was fitted with bilateral hearing aids. In June 2003, Pedersen was placed on light duty, but returned to full duty in September 2003, after obtaining a medical release.

¶ 6 On June 22, 2004, Pedersen and other firefighters at his station responded to a call regarding a tanker truck fire on an Illinois toll road. The firefighters proceeded to the location in a fire engine, with emergency lights and siren activated. Pedersen was wearing his full "turnout gear" for the call.[2] According to Pedersen, a toll road is a dangerous location to fight a fire. Thus, as a precautionary measure, the firefighters positioned the fire engine behind the scene, in order to protect the firefighters, turning the fire engine's wheels toward the traffic to provide additional protection in the event traffic strikes the fire engine from the rear.

¶ 7 After the fire was extinguished, the firefighters commenced cleaning the scene and packing their equipment. As Pedersen was moving a reflective triangle from the tanker truck, a coworker entered the fire engine and accidentally activated the vehicle's siren. Pedersen was approximately two feet from the front of the fire engine. According to Pedersen, he felt as though his ears were going to "blow up and were bleeding." Pedersen ripped out a hearing aid, breaking it in the process. At the time the siren was activated, the fire engine continued to block traffic on the toll road and the vehicle's emergency lights remained activated.

¶ 8 On the morning of June 23, 2004, Pedersen visited his audiologist because his ears were hurting, with "a lot of ringing." According to Pedersen, the audiologist found swelling and hearing loss. When Pedersen returned to work, the fire battalion chief inquired whether Pedersen had obtained a release from duty. Pedersen responded he had not obtained a release because he did not think an audiologist could provide one. Pedersen's battalion chief then sent Pedersen to a doctor, who found no swelling and cleared Pedersen to return to duty as a full-time firefighter. The record contains a letter dated January 20, 2005, from another audiologist indicating Pedersen was evaluated on October 13, 2004, and stating there appeared to be no change from a prior audiogram conducted on April 15, 2003.

¶ 9 Pedersen continued as a full-time firefighter through February 3, 2005, when Pedersen proceeded to the wrong location on a report of an automobile fire with people trapped inside because he misheard the information. Nevertheless, the firefighters were close enough to the

---

[1]Pedersen does not explain the meaning of a "threshold shift" in his testimony, but he describes a "moderate loss" of hearing, such that he would occasionally not hear what his lieutenant was saying to him.

[2]Pedersen did not define the term "turnout gear." In at least one prior case, this court has referred to "turnout gear" as the coats and pants worn by firefighters at fire suppression. *Lindemulder v. Board of Trustees of the Naperville Firefighters' Pension Fund*, 408 Ill. App. 3d 494, 496 (2011).

location to arrive timely to the scene, where the issue was a problem with an automobile's radiator, not a fire, and the people were outside the vehicle. In addition, Pedersen had difficulty hearing pre-alert tones (because he slept without his hearing aids) and could not always hear the whistle on the firefighters' new air packs.[3] Pedersen initially was placed on light duty, but was ultimately informed by the fire chief he was "done" and "no longer will be working" as a full-time firefighter.

¶ 10    Pedersen subsequently received benefits under the Public Employee Disability Act (5 ILCS 345/1 *et seq*. (West 2004)). At some time between February 2005 and February 2006, Pedersen applied for line-of-duty disability benefits from the Village's firefighters' pension fund. On October 24, 2007, the board of trustees of the Hoffman Estates Firefighters Pension Fund (Fund) held a hearing on Pedersen's application.

¶ 11    On November 8, 2007, the Fund issued a finding and decision that Pedersen was entitled to a line-of-duty disability pension. The Fund found an increase in Pedersen's hearing loss, based upon an audiogram taken after the June 22, 2004, incident. The Fund "found that the incident of June 22, 2004, in response to an emergency, caused firefighter Pedersen to become disabled relative to his hearing loss."

¶ 12    It is undisputed Pedersen made multiple oral and written demands for the Village to pay his health insurance premiums under the Act, although neither party identifies such written demands in the record on appeal. Section 10 of the Act, in pertinent part, requires employers of full-time firefighters to pay health insurance premiums for the firefighter and his or her spouse and dependent children if the firefighter suffers a catastrophic injury under specified circumstances. 820 ILCS 320/10 (West 2006). The circumstances triggering eligibility for section 10 benefits include when a firefighter is injured as a result of a "response to what is reasonably believed to be an emergency." 820 ILCS 320/10(b) (West 2006).

¶ 13    During this period, the Village's municipal code designated the village manager as the Village's chief administrative officer. Among the powers and duties of the village manager was:

> "To act as a hearing officer under the Public Safety Employee Benefits Act (820 ILCS 320/1 et seq.). He shall hold a hearing and make a determination if an employee subject to the Act is entitled to the benefits provided by the Act. The decision may be appealed to the Circuit Court under the Administrative Review Act." Village of Hoffman Estates Municipal Code § 4-7-4(L) (eff. Aug. 20, 2007).[4]

Norris scheduled a hearing on Pedersen's claim for April 15, 2008. Prior to the hearing, Pedersen's counsel advised Norris by facsimile and mail of Pedersen's position that the hearing was illegal.

¶ 14    Norris held a hearing on Pedersen's claim on April 15, 2008. At the outset of the proceeding, Pedersen's counsel renewed his argument that a hearing was not authorized by statute or the Illinois Constitution. There was no formal ruling on counsel's objection. Norris

_____

[3]Pedersen did not further describe the nature of the air packs, which from the context of the record appear to be oxygen tanks used by firefighters.

[4]This provision was subsequently amended, removing the language requiring the village manager to hear and determine claims under the Act. See Village of Hoffman Estates Municipal Code § 4-7-4 (amended May 14, 2012).

heard testimony from both Pedersen and the Village's acting fire chief, Robert Gorvett, who offered differing opinions regarding whether Pedersen was responding to an emergency at the time the fire engine's siren was accidentally activated. Pedersen testified he was injured during an emergency call because the fire engine's emergency lights were activated, the fire engine was blocking traffic, and firefighters remained in the roadway. Gorvett opined Pederson was not responding to an emergency at the time of the injury, but acknowledged that so long as the fire engine's emergency lights are activated, "the firefighters are in the midst of dealing with an emergency." The parties also submitted exhibits, including audiological evaluations, accident injury reports, and the Fund's written pension decision. Norris also heard arguments by counsel for Pedersen and the Village.

¶ 15  On May 27, 2008, Norris issued a written finding and decision denying Pedersen's application for health benefits. The decision acknowledges Pedersen suffers from a condition causing him to be disabled as a Village firefighter. The decision also notes Pedersen was awarded a line-of-duty pension by the Fund and reached an amicable settlement of a workers' compensation claim approved by the Illinois Workers' Compensation Commission. Norris found the medical evidence suggested Pedersen's disability was due to the cumulative effects of exposure to noise over time, both on and off duty, in both emergency and nonemergency situations, which did not fall within the scope of the Act. Norris also found the medical evidence did not establish Pedersen's disability resulted from responding to an emergency, reasoning the June 22, 2004, incident did not cause or aggravate Pedersen's preexisting hearing loss.

¶ 16  On August 6, 2008, plaintiffs filed their complaint for a declaratory judgment against defendants in the circuit court, seeking a declaration of their rights under the Act. On September 8, 2008, defendants filed a combined motion to dismiss the complaint pursuant to section 2-619.1 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2008)). In the motion, defendants sought dismissal pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2008)), arguing the appeal was governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2008)) and not filed within the 35-day period specified by the statute. Defendants also sought dismissal pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2008)), arguing: (1) Norris was not a proper party; (2) plaintiffs failed to allege specific facts supporting their allegations Pedersen suffered a catastrophic injury in response to an emergency; and (3) a declaratory judgment is improper relief for past conduct. On December 23, 2008, the circuit court, based on the general lack of information and legal authority provided by the parties, entered an order dismissing the complaint without prejudice for want of jurisdiction.

¶ 17  On January 21, 2009, plaintiffs filed their first amended complaint[5]–the operative pleading in this appeal–which was comprised of three counts. Count I sought a declaration that the village is liable to pay their past and continuing health insurance premiums pursuant to section 10 of the Act. Count II sought a declaration that the Village ordinance creating an administrative procedure for determining claims under the Act violates section 20 of the Act

_____

[5]On January 6, 2009, plaintiffs sought leave to file their first amended complaint. On January 13, 2009, the circuit court entered an order denying the motion but granting plaintiffs two weeks to file an amended pleading attaching a copy of the Village ordinance that plaintiffs alleged was unconstitutional in the proposed amended pleading.

(820 ILCS 320/20 (West 2004)), article VI, section 9, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 9), and the due process clauses of the United States and Illinois Constitutions (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, § 2). Count III, apparently though not expressly pleaded in the alternative, sought review of the decision to deny plaintiffs benefits under the Act pursuant to the Administrative Review Law.

¶ 18    On April 3, 2009, defendants filed a motion to dismiss the first amended complaint pursuant to section 2-615 of the Code, arguing plaintiffs should be required to seek review by way of a common law writ of *certiorari*. On October 8, 2009, the circuit court denied the motion to dismiss. On December 15, 2009, defendants filed their answer to the first amended complaint.

¶ 19    On February 10, 2010, defendants filed a motion for direction as to further proceedings in light of this court's decision in *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 397 Ill. App. 3d 679 (2009). In *Gaffney*, as in this case, a firefighter sought a declaratory judgment to compel the payment of health coverage benefits under section 10 of the Act and, in the alternative, review under the Administrative Review Law. *Id.* at 680. The defendant fire protection district had passed an ordinance directing the procedure for its firefighters to apply for these benefits under the Act. *Id.* at 681. The circuit court dismissed the declaratory judgment action in *Gaffney*, but held that because the Act did not expressly adopt the Administrative Review Law, it would consider Gaffney's remaining count as a petition for a common law writ of *certiorari*. *Id.* at 682. On appeal, this court agreed that any review would have to be pursuant to a common law writ of *certiorari*. *Id.* at 683.

¶ 20    On February 11, 2010, the circuit court in this case entered an order: (1) stating the court would proceed on count III of the first amended complaint as seeking a common law writ of *certiorari*; (2) setting a briefing schedule on count III; and (3) and holding counts I and II in abeyance pending the outcome of proceedings on count III of the first amended complaint.

¶ 21    The parties submitted briefs regarding count III of the first amended complaint. On May 27, 2010, plaintiffs filed their reply brief regarding count III, which informed the circuit court that the Illinois Supreme Court granted leave to appeal in *Gaffney*. Thereafter, the circuit court entered a series of orders continuing the matter without decision.

¶ 22    On April 4, 2012, plaintiffs filed a motion seeking summary judgment on counts II and III of their first amended complaint, as well as a case management order regarding count I, based on the Illinois Supreme Court's decision in *Gaffney*. See *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012. In their motion, plaintiffs argued our supreme court, by reversing this court in *Gaffney*, rejected the procedures ordered by the circuit court in this case. On May 17, 2012, defendants filed a cross-motion for summary judgment, arguing the supreme court decision in *Gaffney* was distinguishable because the fire protection district in that case was not a home rule unit, whereas the Village is a home rule unit. On August 2, 2012, the circuit court entered an order: (1) denying plaintiffs' motion and granting partial summary judgment in favor of defendants on counts I and II; (2) reiterating that count III would proceed as though seeking a common law writ of *certiorari*; and (3) setting the matter for hearing and argument on September 19, 2012.[6]

_____

[6]The record on appeal does not indicate whether the circuit court in fact heard argument on September 19, 2012.

¶ 23   On October 30, 2012, the circuit court entered a written opinion and order affirming the Village's decision denying plaintiffs' claim. The circuit court ruled the Village was not collaterally estopped from denying plaintiffs' claim by the Fund's decision, reasoning the Village was not bound by the factual findings of another body considering different benefits, particularly where the supreme court's decision in *Gaffney* now controlled the definition of an "emergency" under section 10 of the Act. The circuit court observed our supreme court held that, to be entitled to benefits under section 10(b) of the Act, "the injury must occur in response to what is reasonably believed to be an unforeseen circumstance involving imminent danger to a person or property requiring an urgent response." See *Gaffney*, 2012 IL 110012, ¶ 64. The circuit court reasoned the injury to Pedersen did not occur in response to an emergency, as Pedersen was cleaning up the scene of the fire at the time he was injured. The circuit court also reasoned the accidental sounding of the siren was unforeseen, but did not involve imminent danger to persons or property requiring an urgent response by Pedersen. Accordingly, the circuit court ruled the Village's decision to deny Pedersen benefits under section 10 of the Act was not clearly erroneous. On November 20, 2012, plaintiffs filed a timely notice of appeal to this court.

¶ 24                                   DISCUSSION

¶ 25   On appeal, plaintiffs argue: (1) the circuit court erred in granting partial summary judgment and proceeding as though plaintiffs sought a common law writ of *certiorari*; (2) the Village's procedure for resolving claims under the Act violates principles of due process under the United States Constitution; (3) the Village's procedure violates article VI, section 9, of the Illinois Constitution, which grants circuit courts (with some exceptions) original jurisdiction of all justiciable matters; (4) the Village is collaterally estopped from denying benefits under the Act where the Fund found Pedersen acted in response to an emergency; and (5) plaintiffs are entitled to benefits under the Act because Pedersen suffered a catastrophic injury while responding to an emergency. We will first turn to consider plaintiffs' procedural claims relating to the circuit court's August 2, 2012, order prior to addressing the affirmation of the denial of the application for benefits under the Act in the circuit court's ruling on October 30, 2012.

¶ 26          The Partial Summary Judgment and Proceedings by Way of *Certiorari*

¶ 27   Plaintiffs first argue the circuit court erred in granting partial summary judgment in favor of defendants on their claim for a declaration of their rights under the Act and a declaration that the Village ordinance creating an administrative procedure for determining claims under the Act was contrary to the Act and unconstitutional. Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of triable fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). In this case, the defendants filed a cross-motion for summary judgment. "When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. We review grants of summary judgment

*de novo*. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

¶ 28                    The Village's Authority to Create an Administrative Procedure

¶ 29    Plaintiffs argue the circuit court's ruling is contrary to the decision in *Gaffney*. In that case, our supreme court ruled the circuit court erred in dismissing a firefighter's complaint for a declaratory judgment of his entitlement to benefits under section 10 of the Act and treating his alternative claim for administrative review as seeking a common law writ of *certiorari*. *Gaffney*, 2012 IL 110012, ¶ 30. The supreme court observed the defendant–the board of trustees of a fire protection district–was an administrative agency with no general or common law powers, and was limited to those powers specifically authorized by statute. *Gaffney*, 2012 IL 110012, ¶ 38. The court's review of the Fire Protection District Act (70 ILCS 705/0.01 *et seq.* (West 2010)) revealed no provision indicating that the legislature intended the board's denial of section 10 benefits to be an administrative decision subject to administrative review. *Gaffney*, 2012 IL 110012, ¶ 43. The court also observed the Act itself does not provide any guidance on the proper procedure for seeking section 10 benefits. *Gaffney*, 2012 IL 110012, ¶ 44.

¶ 30    Accordingly, the court concluded the legislature did not express an intent to provide the fire protection district with the authority to make administrative decisions on its employees' eligibility for section 10 benefits under the Act. *Gaffney*, 2012 IL 110012, ¶ 45. Consequently, the court also concluded the board's decision was "not an administrative agency action, but [was] only an employer's objection to paying section 10 benefits." *Gaffney*, 2012 IL 110012, ¶ 45. Thus, our supreme court ultimately concluded the circuit court erred in dismissing the declaratory judgment count of Gaffney's complaint seeking relief under the Act. *Gaffney*, 2012 IL 110012, ¶ 45.

¶ 31    Defendants argue *Gaffney* is distinguishable on the ground that case involved a non-home-rule unit of government, whereas the Village here is a home rule unit.[7] We agree. Under the Illinois Constitution, the only units of local government that may exercise home rule powers are counties and municipalities. Ill. Const. 1970, art. VII, § 6(a). The term "municipality" comprises cities, villages, and incorporated towns. Ill. Const. 1970, art. VII, § 1. A fire protection district, such as was at issue in *Gaffney*, is neither a county nor a municipality and cannot have home rule powers. See *Dineen v. City of Chicago*, 125 Ill. 2d 248, 256 (1988). In contrast, plaintiffs here do not dispute the circuit court's finding that the Village is a home rule unit.[8]

¶ 32    "The home rule provisions of the 1970 Illinois Constitution were designed to alter drastically the relationship between our local and state governments." *Palm v. 2800 Lake*

---

[7]The Illinois Municipal League filed a brief as *amicus curiae*, criticizing the drafting of the Act and arguing the supreme court decision in Gaffney does not limit the authority of municipalities–home rule or otherwise–to adopt administrative procedures for determining claims under the Act. An *amicus*, however, cannot raise issues not raised by the parties to the appeal. *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 62 (2001). Accordingly, our opinion is confined to the argument defendants raise regarding home rule authority.

[8]This court has previously recognized the Village is a home rule unit. See, *e.g.*, *Stahl v. Village of Hoffman Estates*, 296 Ill. App. 3d 550, 554 (1998).

- 8 -

*Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 29. Article VII, section 6(a), of the Illinois Constitution provides:

> "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a).

If the legislature does not expressly limit or deny home rule authority, a municipal ordinance and a state statute may operate concurrently, as provided in article VII, section 6(i):

> "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(i).

Under article VII, section 6(h), the General Assembly "may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit" (Ill. Const. 1970, art. VII, § 6(h)), but if the legislature intends to limit or deny the exercise of home rule powers, the statute must contain an express statement to that effect. *Palm*, 2013 IL 110505, ¶ 31. "When the General Assembly intends to preempt or exclude home rule units from exercising power over a matter, that body knows how to do so." *City of Chicago v. Roman*, 184 Ill. 2d 504, 517 (1998). "In many statutes that touch on countless areas of our lives, the legislature has expressly stated that, pursuant to section 6(h) or 6(i), or both, of article VII of the Illinois Constitution, a statute is declared to be an exclusive exercise of power by the state and that such power shall not be exercised by home rule units." *Id.* (and statutes cited therein). In short, "the Illinois Constitution provides home rule units with the same powers as the sovereign, except when those powers are limited by the General Assembly." *Palm*, 2013 IL 110505, ¶ 32.

¶ 33    In general, the sovereign powers of home rule units extend to the creation of administrative agencies and procedures. See, *e.g.*, *Bremen Community High School District No. 228 v. Cook County Comm'n on Human Rights*, 2012 IL App (1st) 112177, ¶ 3. A home rule unit, however, may not constitutionally dictate that review of administrative decisions fall under the Administrative Review Law, as the method of judicial review is not a function pertaining to the home rule unit's government and affairs. *E.g.*, *Paper Supply Co. v. City of Chicago*, 57 Ill. 2d 553, 580 (1974). As will be discussed in more detail, the provision of the Village ordinance attempting to dictate the method of judicial review, however, is severable and does not affect the validity of the remainder of the ordinance. See *id.* Accordingly, we turn to consider whether the Village's authority has been limited by the General Assembly in this case.

¶ 34                              The Scope of Restrictions on Home Rule Under the Act

¶ 35    Plaintiffs contend the General Assembly limited the home rule powers of the Village in section 20 of the Act, which provides:

> "An employer, including a home rule unit, that employs a full-time law enforcement, correctional or correctional probation officer, or firefighter may not provide benefits to persons covered under this Act in a manner inconsistent with the requirements of this Act. This Act is a limitation under subsection (i) of Section 6 of Article VII of the Illinois Constitution on the concurrent exercise of powers and functions exercised by the State." 820 ILCS 320/20 (West 2006).

Plaintiffs maintain section 20 bars a home rule unit from establishing an administrative procedure for determining benefits under the Act. Plaintiffs rely on *Gaffney*. In that case, Gaffney contended that section 20 of the Act prohibits a municipality or political subdivision from enacting any ordinance inconsistent with payment of section 10 benefits (*Gaffney*, 2012 IL 110012, ¶ 31), but the court did not decide the issue on that basis, ruling instead the legislature did not express an intent to provide a fire protection district with the authority to make administrative decisions on its employees' eligibility for section 10 benefits under the Act (*Gaffney*, 2012 IL 110012, ¶ 45). Defendants maintain section 20 merely bars home rule units from providing benefits in a manner substantively inconsistent with the requirements of the Act, *e.g.*, attempting to discontinue benefits earlier than the time periods specified in section 10 of the Act. See 820 ILCS 320/10(a) (West 2006). The construction of the Act is a question of law that we review *de novo*. *Gaffney*, 2012 IL 110012, ¶ 50.

¶ 36    In interpreting section 20 of the Act, we note section 7 of the Statute on Statutes provides:

> "No law enacted after January 12, 1977, denies or limits any power or function of a home rule unit, pursuant to paragraphs (g), (h), (i), (j), or (k) of Section 6 of Article VII of the Illinois Constitution, unless there is specific language limiting or denying the power or function and the language *specifically sets forth in what manner and to what extent it is a limitation on or denial of the power* or function of a home rule unit." (Emphasis added.) 5 ILCS 70/7 (West 2006).

This rule has been formally adopted as part of Illinois home rule jurisprudence. *Palm*, 2013 IL 110505, ¶ 32. Moreover, in determining whether a home rule unit may legislate in a specific area, we bear in mind that the "[p]owers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, § 6(m).

¶ 37    In this case, the Act was enacted in 1997. Pub. Act 90-535 (eff. Nov. 14, 1997) (adding 820 ILCS 320/1 *et seq*.). Accordingly, the language of section 20 must specifically set forth in what manner and to what extent it limits or denies the power or function of home rule units. *Palm*, 2013 IL 110505, ¶ 32. Unlike the statutes mentioned in *Roman*, section 20 contains no language declaring the manner of deciding claims under the Act is an exclusive state power or function. Accordingly, the language in section 20 must be construed as merely limiting a concurrent exercise of home rule authority. Ill. Const. 1970, art. VII, § 6(i); *Palm*, 2013 IL 110505, ¶ 32. Section 20 precludes a home rule unit from providing benefits to persons covered under the Act "in a manner inconsistent with the requirements of this Act." 820 ILCS 320/20 (West 2006). The Act, as defendants acknowledge, has substantive requirements. The Act, however, does not provide any guidance on the proper procedure for seeking section 10 benefits. *Gaffney*, 2012 IL 110012, ¶ 44. As section 20 does not specifically limit or define the procedures a home rule unit may adopt for determining claims under the Act, we conclude a home rule unit may employ an administrative procedure for assessing claims without acting in a manner inconsistent with the requirements of the Act. See *Palm*, 2013 IL 110505, ¶ 32; 5 ILCS 70/7 (West 2006). Accordingly, the circuit court did not err in granting summary judgment to defendants on count I of the first amended complaint.

¶ 38    As to count II of the first amended complaint, plaintiffs maintain the Village's administrative procedure for determining claims under the Act was unconstitutional on its face and as applied to them in this case. A reviewing court, however, will decide a constitutional question only where it is essential to the disposition of a case. *Emergency Treatment, S.C. v. Department of Employment Security*, 394 Ill. App. 3d 893, 907 (2009) (citing *In re Application*

*of the County Collector*, 132 Ill. 2d 64, 73 (1989)). Accordingly, we first turn to consider the administrative decision in this case.

¶ 39                          Proceeding in *Certiorari*

¶ 40      We initially observe the circuit court ordered the parties to proceed as though plaintiffs sought a common law writ of *certiorari*. As previously noted, a home rule unit may not constitutionally dictate that review of administrative decisions fall under the Administrative Review Law. *E.g.*, *Paper Supply Co.*, 57 Ill. 2d at 580. The provision of the Village ordinance attempting to dictate the method of judicial review, however, is severable and does not affect the validity of the remainder of the ordinance. *Id.* Where a statute or ordinance purporting to create or confer power on an administrative agency does not expressly reference the Administrative Review Law and does not provide for any other form of review, then the writ of common law *certiorari* survives as an available method of review. See *Smith v. Department of Public Aid*, 67 Ill. 2d 529, 541 (1977). Indeed, where our supreme court considered a summary judgment on a complaint for declaratory relief and a writ of mandamus, and the underlying statute did not refer to the Administrative Review Law, the court held it would treat the appeal as it would any other appeal on administrative review. *Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324, 337 (2009). Thus, the circuit court did not err in ordering the parties to proceed as though plaintiffs sought a common law writ of *certiorari*. Accordingly, we turn to review defendants' decision to deny Pedersen's application for benefits under the Act.

¶ 41                      Review of the Village's Decision

¶ 42      The circuit court's October 30, 2012, opinion and order denied plaintiffs a common law writ of *certiorari*. Plaintiffs first assert, as they did during the hearing before the Village manager, that the Village was barred from determining whether he was entitled to benefits under the Act by the doctrine of collateral estoppel, an equitable doctrine that precludes a party from relitigating an issue already decided in a prior proceeding. *Herzog v. Lexington Township*, 167 Ill. 2d 288, 293 (1995). The doctrine of collateral estoppel applies to prior decisions by administrative agencies that are adjudicatory, judicial, or quasi-judicial. *Lelis v. Board of Trustees of the Cicero Police Pension Fund*, 2013 IL App (1st) 121985, ¶ 30. Collateral estoppel is applicable only where the issue decided in the prior adjudication is identical with the one presented in the suit in question, there was a final judgment on the merits in the prior adjudication, and the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *Gumma v. White*, 216 Ill. 2d 23, 38 (2005). The party claiming collateral estoppel has the burden of establishing it by clear, concise, and unequivocal evidence. *Waste Management of Illinois, Inc. v. Pollution Control Board*, 187 Ill. App. 3d 79, 83 (1989). Whether the doctrine of collateral estoppel is applicable in a particular case is a question of law that this court reviews under the *de novo* standard of review. *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 158 (2010); *Lelis*, 2013 IL App (1st) 121985, ¶ 13.

¶ 43      Plaintiffs maintain collateral estoppel applies in this case because the Fund had already determined Pedersen was responding to an emergency when he was injured prior to the Village manager's hearing on the request for benefits under the Act. In their brief, defendants argue collateral estoppel does not apply because the Fund was not required to determine whether

Pedersen was injured in response to what is reasonably believed to be an emergency, as is required to obtain benefits under the Act. Moreover, during oral argument, the defendants argued they were not parties or in privity with a party to the adjudication before the Fund.

¶ 44    We observe defendants did not raise the latter argument regarding the identity of the parties in its brief. Arguments omitted from the appellee's brief and raised for the first time at oral argument are forfeited. See Ill. S. Ct. R. 341(i) (eff. July 1, 2008) (applying Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008) to appellees' briefs). Forfeiture, however, is a limitation on the parties and not on this court, which has a responsibility to achieve a just result and maintain a sound and uniform body of precedent. *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 438 (2008). Insofar as plaintiffs had the burden of establishing collateral estoppel in the first instance (*Waste Management of Illinois, Inc.*, 187 Ill. App. 3d at 83), the issue is reviewed *de novo* (*State Building Venture*, 239 Ill. 2d at 158), and since defendants generally argued against the application of collateral estoppel in this case, we relax the rule of forfeiture to consider whether the defendants were parties or in privity with a party to the adjudication before the Fund.

¶ 45    In this case, it is undisputed that the Village and the Fund are not the same party, leaving open the question of whether they are in privity with each other. Privity generally exists when parties adequately represent the same legal interests. *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296 (1992) (in determining whether privity exists, the identity of the interest controls, not the nominal identity of the parties). "There is no generally prevailing definition of 'privity' that the court can apply in all cases; rather, determining privity requires careful consideration of the circumstances of each case." *Apollo Real Estate Investment Fund, IV, L.P. v. Gelber*, 403 Ill. App. 3d 179, 190 (2010).

¶ 46    This court has previously considered the issue of whether a municipality is in privity with an entity such as a municipal pension board. In *Dempsey v. City of Harrisburg*, 3 Ill. App. 3d 696, 698 (1971), in addressing the application of *res judicata*, this court ruled the most logical interpretation of the statute creating a board of trustees for a pension fund was that the city was the real party in interest in both an Industrial Commission hearing and proceedings before the trustees of the city's police pension fund. In *McCulla v. Industrial Comm'n*, 232 Ill. App. 3d 517, 520-21 (1992), this court, relying on *Dempsey*, ruled a workers' compensation claimant was barred from relitigating the issue of causation subsequent to his unsuccessful adjudication of that issue before the pension board. The *McCulla* court recognized the claimant–the party against whom collateral estoppel was asserted–"had a full opportunity to adjudicate the issue of the work-related nature of his disability before the pension board." *Id.* at 521. More recent case law requires the party asserting collateral estoppel to present evidence or that there exists evidence the municipality and the pension board are the same party or in privity with each other. See *Demski v. Mundelein Police Pension Board*, 358 Ill. App. 3d 499, 503 (2005); *Rhoads v. Board of Trustees of the City of Calumet City Policemen's Pension Fund*, 293 Ill. App. 3d 1070, 1075 (1997). The fact that both a municipality and a pension board are public entities is not enough to establish they are the same parties or are in privity for the purpose of collateral estoppel. *Demski*, 358 Ill. App. 3d at 503; *Rhoads*, 293 Ill. App. 3d at 1075.

¶ 47    In this case, the record establishes the defendants were not parties to the proceedings before the Fund. In these proceedings, plaintiffs, who had the burden of substantiating the elements of collateral estoppel, did not present evidence establishing the defendants and the Fund were in privity with each other. As in *Demski*, plaintiffs presented no evidence of collaboration

- 12 -

between the Village and the Fund. *Demski*, 358 Ill. App. 3d at 503. Unlike *Dempsey*, plaintiffs presented no argument based on the statute creating the Fund. *Dempsey*, 3 Ill. App. 3d at 698. Rather, in the circuit court and in this appeal, plaintiffs have relied upon *Mabie v. Village of Schaumburg*, 364 Ill. App. 3d 756, 758 (2006), and *Jensen v. East Dundee Fire Protection District Firefighters' Pension Fund Board of Trustees*, 362 Ill. App. 3d 197, 204 (2005), cases addressing the issue of identity of issues, rather than the issue of whether the party against whom estoppel was asserted was a party or in privity with a party to the prior adjudication.[9] Accordingly, we conclude plaintiffs' collateral estoppel argument fails.

¶ 48    We now turn to consider the merits of defendants' decision denying health insurance benefits under the Act. "A common law writ of *certiorari* is a general method for obtaining circuit court review of administrative actions when the act conferring power on the agency does not expressly adopt the Administrative Review Law and provides for no other form of review." *Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996). The standards of review under a common law writ of *certiorari* are essentially the same as those under the Administrative Review Law. *Id.* On administrative review, an appellate court reviews the final decision of the administrative agency, and not the decision of the circuit court. *Cepero v. Illinois State Board of Investment*, 2013 IL App (1st) 120919, ¶ 10. We, however, do not review the propriety of the reasoning underlying a decision; rather, we review the decision itself and may affirm the decision of an administrative agency when justified in law for any reason disclosed by the record. *Department of Central Management Services (State Police) v. Illinois Labor Relations Board, State Panel*, 382 Ill. App. 3d 208, 221 (2008); *Boaden v. Department of Law Enforcement*, 267 Ill. App. 3d 645, 652 (1994). The applicable standard of review to apply on review of an administrative agency decision depends on whether the question presented is one of fact, one of law, or a mixed question of fact and law. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008).

¶ 49    As previously noted, in order to receive benefits under the Act, a firefighter must suffer a catastrophic injury under specified circumstances. 820 ILCS 320/10 (West 2006). The relevant circumstances triggering eligibility for section 10 benefits in this case would be that Pedersen was injured as a result of a "response to what is reasonably believed to be an emergency." 820 ILCS 320/10(b) (West 2006).

¶ 50    Our supreme court has held the phrase "catastrophic injury" in the Act is synonymous with an injury resulting in a line-of-duty disability under section 4-110 of the Illinois Pension Code

---

[9]Indeed, plaintiffs' reply brief acknowledges these cases do not address the issue of privity, even though the issue was not raised in the appellees' brief. Plaintiffs' reply brief also cites *Garcia v. Village of Mount Prospect*, 360 F.3d 630, 636 (7th Cir. 2004), which held a municipality and a pension board were in privity. Although lower federal court decisions are not binding on Illinois courts, they may be considered persuasive authority. *Wilson v. County of Cook*, 2012 IL 112026, ¶ 30. In *Garcia*, however, the Court of Appeals for the Seventh Circuit ruled the municipality and the pension board were in privity based upon statutory law. *Garcia*, 360 F.3d at 636. Plaintiffs failed to present a statutory argument in this case. Moreover, unlike *Rhoads*, where a plaintiff attempted to use collateral estoppel offensively, based upon a settlement agreement, to the detriment of a defendant not party to the original action, in *Garcia* it was the defendants who sought to invoke *res judicata* defensively, based upon a final adjudication, against a plaintiff who was party to the original action. *Id.* Thus, the fairness concerns underlying the *Rhoads* decision were not present in *Garcia*. *Id.* Accordingly, we are not persuaded to follow *Garcia* in this instance.

- 13 -

(40 ILCS 5/4-110 (West 2010)). *Gaffney*, 2012 IL 110012, ¶ 54 (citing *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 394 (2003)). In this case, the record establishes Pedersen was awarded a line-of-duty disability pension as a result of his injury. Moreover, defendants, in their response in opposition to plaintiffs' writ of *certiorari*, wrote that "[b]ased on Pedersen's separate line-of-duty disability pension, [d]efendants do not dispute that he suffered a catastrophic injury." Thus, in this case, there is no dispute that Pedersen suffered a catastrophic injury in the line of duty within the meaning of section 10(a) of the Act. See *id.*[10]

¶ 51 The remaining issue, therefore, is whether the injury "occurred as the result of the *** firefighter's response to what is reasonably believed to be an emergency." 820 ILCS 320/10(b) (West 2006). In *Gaffney*, our supreme court defined the legal standard for determining an emergency under section 10 of the Act. The *Gaffney* court held that "[t]o be entitled to continuing health coverage benefits under section 10(b), the injury must occur in response to what is reasonably believed to be an unforeseen circumstance involving imminent danger to a person or property requiring an urgent response." *Gaffney*, 2012 IL 110012, ¶ 64.

¶ 52 In this case, the historical facts are undisputed and the legal standard is supplied by *Gaffney*. Accordingly, the issue in this case is a mixed question of law and fact, which typically arises when "the historical facts are not in dispute and the issue is whether the established facts satisfy the statutory standard." *Village of Hazel Crest v. Illinois Labor Relations Board*, 385 Ill. App. 3d 109, 113 (2008). Cases that involve mixed questions of law and fact are subject to a clearly erroneous standard of review. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 392 (2001). An agency's decision is clearly erroneous "only where the reviewing court, on the entire record, is 'left with the definite and firm

---

[10]We note that had the issue remained in dispute, the elements that must be proved in order to establish a firefighter's entitlement to line-of-duty disability benefits are: (1) the claimant is a firefighter; (2) a sickness, accident, or injury was incurred; (3) such sickness, accident, or injury was incurred in or resulted from the performance of an act of duty or from the cumulative effects of acts of duty; (4) the firefighter is mentally or physically disabled for service in the fire department; and (5) the disability renders necessary the firefighter's being placed on a disability pension. 40 ILCS 5/4-110 (West 2008). There is no requirement that an act of duty be the sole or even the primary cause of the applicant's disability; it is sufficient that an act of duty was an aggravating, contributing, or exacerbating factor. *Village of Oak Park v. Village of Oak Park Firefighters Pension Board*, 362 Ill. App. 3d 357, 371 (2005). Thus, to the degree the Village's decision rested on the premise the June 22, 2004, incident must be the sole factor in Pedersen's catastrophic injury, it runs contrary to the decisions in *Gaffney*, *Krohe* and *Village of Oak Park*. See *Gaffney*, 2012 IL 110012, ¶ 54 (a "catastrophic injury" in the Act is synonymous with an injury resulting in a line-of-duty disability); *Krohe*, 204 Ill. 2d at 394 (same); *Village of Oak Park*, 362 Ill. App. 3d at 371 (it is sufficient that an act of duty was an aggravating, contributing, or exacerbating factor of an applicant's disability).

Indeed, in *Richter v. Village of Oak Brook*, 2011 IL App (2d) 100114, this court observed, quite apart from the application of collateral estoppel, the legislative intent that an injured firefighter or police officer to be eligible for benefits under section 10(a) of the Act "whenever his or her injuries were sufficient to qualify for a line-of-duty pension, a pension board's determination in this regard establishes as a matter of law that the firefighter or police officer received a catastrophic injury." *Richter*, 2011 IL App (2d) 100114, ¶ 16 (citing *Krohe*, 204 Ill. 2d at 400). Moreover, the *Richter* court held a claimant may recover under the Act "so long as the injury he sustained *** during an emergency response was a contributing cause of his disability, even if it was not the sole cause of that disability." *Richter*, 2011 IL App (2d) 100114, ¶ 21.

conviction that a mistake has been committed.' " *Id.* at 395 (quoting *United States v. United States Gypsum Co*., 333 U.S. 364, 395 (1948)).

¶ 53 Thus, defendants' decision will not be reversed unless it is clearly erroneous. Although our supreme court in *Gaffney* reviewed the facts in the consolidated cases under the *de novo* standard applicable to declaratory judgment actions, our supreme court's analysis of those facts is instructive in determining whether the Village manager's decision was clearly erroneous in this case.

¶ 54 Gaffney was injured during a training exercise involving an actual fire on the third floor of a building. Gaffney wore full fire gear for the exercise, and his battalion chief instructed him to treat the exercise as an actual emergency. The fire hose became stuck as the crew was moving it between the second and third floors. Due to smoke, there was no visibility. Gaffney followed the hose back down to the second floor and discovered that it was hooked around a loveseat. In moving this piece of furniture, Gaffney injured his shoulder. *Gaffney*, 2012 IL 110012, ¶¶ 6-8.

¶ 55 Our supreme court held that Gaffney's training exercise became an emergency when there arose the unforeseen event of the hose becoming stuck. *Id.* ¶ 66. This event created imminent danger and required an urgent response, as "the crew was stranded on the stairwell to the third floor of the burning building with no visibility and no water to put out the fire." *Id.* Moreover, when Gaffney went to free the hose, he "put himself at risk of becoming lost and disoriented in the smoke-filled building." *Id.* ¶ 67. The court noted that Gaffney had no "option of ending his participation in the exercise after it became an emergency." *Id.*

¶ 56 Lemmenes also was injured during a training exercise. The exercise took place at an abandoned factory. The firefighters were required to wear full fire gear. There was no actual fire, but the firefighters' masks were blackened in order to simulate live fire conditions, and they were told to act as if there was an emergency. The firefighters were instructed that a fellow firefighter was trapped inside the building, was running out of air, and would die if not found and rescued. The firefighters were given specific instructions for the exercise, including a predetermined path for running the fire hose into the building. Fire department supervisors testified that the individual acting as the trapped firefighter was never in real danger during the exercise, which was performed under " 'controlled conditions.' " *Id.* ¶¶ 21-24.

¶ 57 Lemmenes was injured when he attempted to free the trapped firefighter. *Id.* ¶ 22. Our supreme court held Lemmenes could not have reasonably believed that he was responding to an "emergency" under section 10(b). The court noted the exercise was conducted under " 'controlled conditions,' " no one was in imminent danger at any point during the exercise, and "[n]o unexpected or unforeseen developments arose during th[e] drill, unlike the situation in *Gaffney* where the hose line became entangled in an unknown object." *Id.* ¶ 77.

¶ 58 In short, following *Gaffney*, the question of whether an emergency exists is not categorical, but depends on the circumstances of the moment. An event or incident that is not initially an emergency may become an emergency as the circumstances change. *Id.* ¶ 66.

¶ 59 For example, in *Springborn v. Village of Sugar Grove*, 2013 IL App (2d) 120861, the appellate court considered in consolidated appeals whether two police officers making claims under the Act reasonably believed they were responding to emergencies. Springborn had observed a field of asphalt debris on Route 47, activated his emergency lights, parked behind the pieces in the west northbound lane, and ultimately injured his back while clearing the road. *Springborn*, 2013 IL App (2d) 120861, ¶ 10. Cecala, the other claimant, parked his police vehicle behind a fallen traffic signal pole in the west southbound straight lane of Route 31. *Id.*

¶ 16. Cecala testified he knew his vehicle, blocking the downed signal, was itself a " 'hazard' " and that it is " 'very dangerous for a police officer to be in the roadway even with the lights on.' " *Id.* Cecala believed the situation remained an emergency because he was aware of incidents where a person or police vehicle had been struck by oncoming traffic, even when the vehicle's emergency lights were activated. *Id.* Cecala was injured while he and another officer were moving the fallen traffic signal. *Id.* ¶ 18. The court, relying on *Gaffney*, ultimately concluded the claims in both cases were allowable under the Act. *Id.* ¶ 42.

¶ 60      In this case, Pedersen and others responded to a call regarding a tanker truck fire on an Illinois toll road and proceeded to the location in full gear, with emergency lights and siren activated. After the fire was extinguished, while Pedersen and other firefighters were cleaning the scene and packing their equipment, the fire engine remained positioned to protect the firefighters, who were still working upon the toll road. The fire engine's emergency lights remained activated as an additional safeguard for firefighters working in the area where the fire had just been extinguished. Pedersen was returning safety triangles from the tanker truck and was within feet of the fire engine when the siren was inadvertently and unexpectedly activated. Pedersen's testimony regarding these facts falls within the scope of a response reasonably believed to be an emergency under the Act, the Village fire chief's contrary opinion notwithstanding. See *id.* It was therefore reasonable to believe the emergency was ongoing and the scene remained dangerous. Accordingly, Pedersen was injured as the result of an unforeseen circumstance involving imminent danger to a person or property requiring an urgent response. Therefore, we conclude defendants' decision to deny plaintiffs benefits under section 10 of the Act was clearly erroneous.

¶ 61      Given our conclusion that defendants' decision must be reversed, we need not reach plaintiffs' constitutional objections to the administrative procedure employed in this case, especially where, as here, the procedure has been repealed by the Village, rendering any such question moot.

¶ 62                              CONCLUSION

¶ 63      In sum, we conclude the Village, as a home rule unit, had the authority to establish an administrative procedure for determining claims for benefits under the Act, subject to judicial review by seeking a common law writ of *certiorari*. Defendants' decision to deny plaintiffs benefits under section 10 of the Act, however, was clearly erroneous, as Pedersen's catastrophic injury occurred in response to what the record clearly established to be an emergency as defined in *Gaffney*. For all of the aforementioned reasons, defendants' finding and decision are reversed, as is the judgment of the circuit court of Cook County regarding count III of the first amended complaint. We affirm the summary judgment granted in favor of defendants on counts I and II of the first amended complaint, although count II is affirmed on the ground that the constitutional claim is moot.

¶ 64      Circuit court affirmed in part and reversed in part; defendants' decision set aside.