# Illinois Official Reports

## Appellate Court

---

### *Esser v. City of Peoria*, 2019 IL App (3d) 180702

---

| | |
|---|---|
| Appellate Court Caption | TERRY ESSER, Plaintiff-Appellant, v. THE CITY OF PEORIA, Defendant-Appellee. |
| District & No. | Third District<br>No. 3-18-0702 |
| Filed | November 20, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 16-MR-198; the Hon. Katherine Gorman Hubler, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jennifer Bonesteel, of Stephen P. Kelly, Attorney at Law, LLC, of Peoria, for appellant.<br><br>Kenneth M. Snodgrass Jr. and Kevin O. Sheahan, of Hasselberg Grebe Snodgrass Urban & Wentworth, of Peoria, for appellee. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Justices O'Brien and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1        Plaintiff, Terry Esser, a disabled former Peoria police officer who was awarded health insurance benefits pursuant to the Public Safety Employee Benefits Act (Act) (820 ILCS 320/1 *et seq.* (West 2014)), filed an action in the trial court against defendant, the City of Peoria (City), seeking a declaratory judgment that the City was required by the Act to pay the entire premium amount for Esser to be covered by the City's low-deductible group health insurance plan. The City opposed the action and argued that, under the statute, it was only required to pay the premium amount for Esser to be covered by the City's high-deductible group health insurance plan, which was less expensive than the City's low-deductible plan. Following a hearing, the trial court ruled in favor of the City and dismissed Esser's declaratory judgment action. Esser appeals. We affirm the trial court's judgment.

¶ 2                                                    BACKGROUND
¶ 3        Esser was employed by the City, a home-rule unit, as a police officer. In June and October 2013, Esser injured his back while at work. Esser eventually had surgery on his back but was unable to return to work as a police officer. In September 2014, Esser filed an application with the pension board for line-of-duty disability pension benefits, which was later granted. In August 2015, Esser filed an application for health insurance benefits from the City pursuant to section 10 of the Act (*id.* § 10). The City initially opposed the application but subsequently withdrew its objection. In November 2015, an agreed order was entered granting Esser health insurance benefits under the Act.

¶ 4        In February 2016, the City sent Esser a letter notifying him that he had two different group health insurance plans available to him as a recipient under the Act—a high-deductible plan and a low-deductible plan—the same two plans that the City offered to active City police officers. Esser had previously been enrolled in the low-deductible plan prior to leaving his employment with the police department (due to his disability). The City informed Esser that it would pay the full cost of the premium for the high-deductible plan but that if Esser chose the low-deductible plan, which was more expensive, he would have to pay the difference in the premiums between the two plans. Esser later elected to enroll in the low-deductible plan.

¶ 5        The directions that the City gave Esser regarding the premium that the City would pay were taken from a City policy adopted in January 2014. Prior to that time, for approximately seven years, the City had paid the entire premium amount for its recipients under the Act, regardless of whether those recipients had enrolled in the high-deductible or low-deductible plan. Only one exception to the City's policy had been made. The City had elected to pay the entire premium amount of the low-deductible plan for the wife and children of a police officer, Officer Faulkner, who had been killed in the line of duty.

¶ 6        In March 2016, Esser filed the instant declaratory judgment action against the City, asking the trial court to issue a ruling that the City was required by the Act to pay the entire cost of Esser's health insurance premium for the low-deductible plan. After a hearing, the trial court ruled in favor of the City and dismissed Esser's declaratory judgment action. Esser appealed.

# ANALYSIS

On appeal, Esser argues that the trial court erred in finding that, under the Act, the City was not required to pay the entire cost of Esser's health insurance premium for the low-deductible group health insurance plan and in dismissing Esser's declaratory judgment action on that basis. Esser asserts that, as a matter of statutory interpretation, the Act requires the City to pay the entire premium amount of "basic" group health insurance coverage for its recipients under the Act, which Esser maintains in this case is the entire premium amount for the low-deductible plan. More specifically, Esser contends that both the high- and low-deductible plans are "basic" group health insurance plans as described in the statute and that the City is required by the Act to continue Esser in the low-deductible plan because that was the health insurance plan that Esser had at the time of his disability. As further support for his position on appeal, Esser points to the prior instance where the City paid the entire premium amount of the low-deductible plan for the family of Officer Faulkner after Faulkner was killed in the line of duty and asserts that the Act does not allow the City to distinguish between employees who are killed in the line of duty and those who are catastrophically injured in determining what amount to pay for benefits under the Act. Finally, Esser maintains that continuing his existing health insurance plan at the same level is not a "supplemental" benefit under the Act, despite the City's contention to the contrary, and is consistent with the purpose of the statute—to continue health insurance coverage for those workers (and their families) who are killed or catastrophically injured in the line of duty. For all of the reasons stated, Esser asks that we reverse the trial court's judgment.

The City argues that the trial court's ruling was proper and should be upheld. The City asserts that the plain language of the Act mandates only that the City pay the entire premium amount for the "basic" group health insurance plan, which the City contends is the high-deductible plan. Thus, the City maintains that it satisfied its statutory obligation under the Act when it agreed to pay the entire premium amount of the high-deductible plan for Esser. In support of its assertion, the City points out that the statute refers to "plan" in the singular form, rather than plural, and contends that the singular language is an indication that, contrary to Esser's claim on appeal, an employer can have only one "basic" group health insurance plan. The City asserts further that Esser's broad interpretation of the Act in favor of recipients is contrary to case law precedent, which holds that the Act must be construed in favor of employers. In addition, the City asserts that, under its home-rule authority, it has the ability to designate which of its group health insurance plans is the "basic" plan for the purpose of benefits under the Act, since the City has an obligation to be fiscally responsible along with providing those benefits. The City also contends that it is not prohibited under the Act from providing additional benefits to the family of a police officer who has been killed in the line of duty and that the City doing so for Officer Faulkner's family did not violate the requirements of the Act. Finally, the City maintains that its health insurance benefits can change from year to year and, therefore, it would be unworkable to enter a declaratory judgment requiring the City to provide a specific set of benefits to Esser. For all of the reasons set forth, the City asks that we affirm the trial court's judgment.

The principles of statutory construction are well established. The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 56. The surest and most reliable indicator of that intent is the statutory language itself, given its plain and ordinary

meaning. *Id.* In determining the plain meaning of statutory terms, a court should consider the statute in its entirety and keep in mind the subject the statute addresses and the apparent intent of the legislature in enacting the statute. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009); 5 ILCS 70/1.01 (West 2018) (in construing a statute, "[a]ll general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the General Assembly may be fully carried out"). If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory construction. *Gaffney*, 2012 IL 110012, ¶ 56. A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. *Id.* However, if the language of a statute is ambiguous in that it is susceptible to more than one reasonable interpretation, a court may consider extrinsic aids to determine the meaning of the statutory language. See *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 51 (1990). The standard of review on appeal for an issue of statutory construction is *de novo*. *Gaffney*, 2012 IL 110012, ¶ 50.

¶ 11    One of the main purposes of the Act is to continue employer-provided health insurance coverage for public safety employees and their families if an employee is killed or catastrophically injured in the line of duty. See *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶¶ 16-17; *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 20. In accordance with that purpose and of relevance to this appeal, section 10(a) of the Act states, in pertinent part, as follows:

> "An employer who employs a full-time law enforcement *** officer *** who *** suffers a catastrophic injury or is killed in the line of duty shall pay the entire premium of the employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee until the child reaches the age of majority ***." 820 ILCS 320/10(a) (West 2014).

Section 10(a) states further, however, that the term " 'health insurance plan' " does not include "supplemental" benefits that are not part of the "basic" group health insurance plan. See *id.*

¶ 12    The Act does not define the terms "basic" or "supplemental" (see *id.* § 1 *et seq.*) and does not provide any guidance as to the proper procedure for seeking benefits under the Act (*Gaffney*, 2012 IL 110012, ¶ 44).[1] The courts, however, have held that both home-rule and non-home-rule municipalities may enact administrative procedures for resolving claims for benefits under the Act as long as the procedures enacted are not inconsistent with the requirements of the Act. See *Pedersen v. Village of Hoffman Estates*, 2014 IL App (1st) 123402, ¶¶ 37, 63 (stating the legal principle as to home-rule units); *Englum v. City of Charleston*, 2017 IL App (4th) 160747, ¶ 68 (stating the legal principle as to non-home-rule units); see also 820 ILCS 320/20 (West 2014) (stating that an employer, including a home-rule

---

[1]Although we may consider the dictionary definition of statutory terms in deciding upon the plain meaning of a statute, such an approach is not particularly helpful in this case, as the dictionary definitions of the two terms at issue provide nothing enlightening to our analysis and would require us to incorporate the definitions of the root word of each statutory term into the analysis in an effort to determine the actual definitions of the statutory terms. See *basic*, Dictionary.com, https://www.dictionary.com/browse/basic# (last visited Nov. 18, 2019) [https://perma.cc/5MH9-W5SJ]; *supplemental*, Dictionary.com, https://www.dictionary.com/browse/supplemental?s=t (last visited Nov. 18, 2019) [https://perma.cc/URA3-MLL8].

unit, may not provide benefits to its recipients under the Act in a manner that is inconsistent with the requirements of the Act). In addition, because the Act created a new liability for employers in derogation of the common law, we must construe the Act strictly and in favor of employers. *Nowak*, 2011 IL 111838, ¶ 19.

¶ 13 In the present case, when we construe the Act strictly and in favor of the City, we find that the City was not required by the Act to pay the entire premium amount for Esser to have the City's more-expensive, low-deductible group health insurance plan. To reach that conclusion, we need not go past the initial layer of statutory analysis. Section 10 of the Act clearly and unambiguously requires the City, as the employer, to pay the entire premium of the City's "basic" health insurance plan for the City's recipients under the Act. See 820 ILCS 320/10(a) (West 2014). The City has designated the high-deductible plan as its "basic" plan for the purpose of benefits under the Act, and the case law indicates that the City may properly do so as long as the procedures the City establishes are not inconsistent with the requirements of the Act. See *Pedersen*, 2014 IL App (1st) 123402, ¶¶ 37, 63; *Englum*, 2017 IL App (4th) 160747, ¶ 68. The City, therefore, complied with the requirements of the Act when the City provided to Esser the entire premium amount for the City's less expensive, high-deductible group health insurance plan—the City's "basic" group health insurance plan. See 820 ILCS 320/10(a) (West 2014).

¶ 14 Contrary to Esser's assertion on appeal, the fact that the City paid the entire premium amount of the low-deductible plan for Officer Faulkner's family does not establish that the City's procedure for resolving claims under the Act (the designation of the high-deductible plan as the "basic" plan) is inconsistent with the requirements of the Act. Section 10 sets forth the minimum statutory amount (the cost of the premium of the "basic" plan) that the City must pay to comply with the requirements of the Act (see *id.* § 10(a)), and the City satisfies those requirements by paying that amount, at the very least, for all its recipients under the Act. The plain language of section 10, however, does not prohibit the City from paying an additional amount for the families of officers who were killed in the line of duty. Nor does the plain language of section 10 require the City to pay an additional amount in cases such as this where the City, as the employer, offers additional more expensive plans as an added or "supplemental" benefit that its employees may choose. See *id.* § 10(a). Although Esser calls upon this court to construe section 10 differently, this court cannot depart from the plain language of section 10 and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. See *Gaffney*, 2012 IL 110012, ¶ 56.

¶ 15                                                   CONCLUSION
¶ 16 For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County.

¶ 17 Affirmed.