NOTICE

Decision filed 03/25/15. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2015 IL App (5th) 140122

NO. 5-14-0122

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| JEFFREY W. VAUGHN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 12-MR-172 |
| | ) | |
| THE CITY OF CARBONDALE, | ) | Honorable |
| | ) | Kimberly L. Dahlen, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court, with opinion.
Presiding Justice Cates and Justice Goldenhersh concurred in the judgment and opinion.

**OPINION**

¶ 1 The plaintiff, Jeffrey Vaughn, sought a permanent injunction to prevent the defendant, the City of Carbondale, from terminating his employer-provided health insurance coverage in accordance with section 10 of the Public Safety Employee Benefits Act (the Act) (820 ILCS 320/10 (West 2012)). The circuit court of Jackson County entered an order denying the complaint. For the reasons which follow, we reverse the decision of the circuit court and remand for further proceedings.

¶ 2 On June 28, 2005, the plaintiff, who was a police officer for the City of Carbondale (the City), was on duty when he was stopped by a motorist asking for

directions. While he was outside his squad car talking with the motorist, he received a request from a police dispatcher for him to respond over the radio. He returned to his vehicle and reached headfirst through his driver's side door, which he had left open, in an attempt to retrieve his radio from inside the car. As he was reaching inside the vehicle, he struck the top of his head on the door frame, causing him to "see stars" and experience an immediate sharp pain in his arm. After his shift, he sought medical attention from his personal physician, who took him off duty as a result of his injury.

¶ 3    Thereafter, in April 2007, the plaintiff applied for a line-of-duty disability pension pursuant to section 3-114.1 of the Illinois Pension Code (40 ILCS 5/3-114.1 (West 2006)). Following a hearing on his application, the Carbondale Police Pension Board (the Board) made a finding that the plaintiff was not injured as a result of his employment with the police department. The plaintiff appealed the decision of the Board, and the circuit court of Jackson County reversed the Board's decision, concluding that the evidence supported the finding that the plaintiff was injured during the course of his employment and was therefore eligible for a line-of-duty pension. This court affirmed the circuit court's decision on May 25, 2011. *Vaughn v. Carbondale Police Pension Board*, No. 5-10-0293 (2011) (unpublished order under Supreme Court Rule 23).

¶ 4    As a result of the plaintiff's duty-related disability, the plaintiff, in a letter dated January 26, 2012, requested that the City provide him health insurance coverage in accordance with section 10 of the Act (820 ILCS 320/10 (West 2012)), which provides health insurance coverage for injured law enforcement officers and their families under certain circumstances. Shortly thereafter, the City provided the plaintiff and his wife

with health insurance coverage without any objection.  In 2012, the Board directed the plaintiff to submit to a physical examination as required by the Illinois Pension Code. The plaintiff complied.  After receiving the medical report rendered as a result of the medical examination, the Board met to determine whether the plaintiff's line-of-duty pension benefits should be continued or terminated.  The Board thereafter filed a decision, which terminated the plaintiff's pension payments effective July 26, 2012, in light of the medical examiner's finding that the plaintiff was able to return to work as a police officer.  In July 2012, the Board sent the plaintiff a letter advising him of its decision.

¶ 5    In August 2012, the plaintiff filed a complaint for administrative review in the circuit court of Jackson County, cause No. 12-MR-156.  The circuit court affirmed the Board's decision to terminate the plaintiff's disability pension benefits.  The plaintiff then appealed to this court, which, on June 30, 2014, reversed the circuit court's decision on the basis that the plaintiff was denied procedural due process where he was not given notice and an opportunity to be heard before the Board terminated his pension benefits. *Vaughn v. Carbondale Police Pension Board*, 2014 IL App (5th) 130457-U.  This court did not address the issue of whether the Board's determination that the plaintiff was no longer disabled was against the manifest weight of the evidence.

¶ 6    While the appeal on the termination of the plaintiff's disability pension benefits in cause No. 12-MR-156 was pending, the plaintiff filed the complaint at issue in this appeal, which sought a permanent injunction preventing the City from terminating his employer-provided health insurance coverage.  After considering the briefs submitted by

3

the parties and the circuit court's decision in cause No. 12-MR-156, the circuit court declined to enter a permanent injunction. The court found that the plaintiff had not suffered a catastrophic injury, which was required under section 10 of the Act (820 ILCS 320/10 (West 2012)), in order to receive employer-provided health insurance coverage, because the medical examination had indicated that the plaintiff was able to return to work as a police officer and had recovered from his disability. The order denying the permanent injunction was entered before this court reversed the Board's decision to terminate the plaintiff's pension disability benefits. The plaintiff appeals the denial of the permanent injunction.

¶ 7    On appeal, the plaintiff argues that the circuit court erred in denying his request that the City be required to permanently provide health insurance to him and his wife pursuant to the Act and that there was no statutory basis to terminate the provided insurance coverage once awarded. In response, the City argues that the plaintiff was not entitled to lifetime health insurance coverage under the Act because his work-related injury was not incurred as the result of his response to fresh pursuit or his response to what he reasonably believed to be an emergency, an unlawful act perpetrated by another, or during the investigation of a criminal act. Furthermore, the City argues that awarded lifetime health insurance coverage can be terminated under the Act.

¶ 8    A party seeking a permanent injunction must show (1) a clear and ascertainable right in need of protection, (2) irreparable harm if injunctive relief is not granted, and (3) no adequate remedy at law. *Sparks v. Gray*, 334 Ill. App. 3d 390, 395 (2002). Section 10 of the Act provides, in relevant part, that injured full-time law enforcement officers and

4

their families are eligible to receive health insurance benefits if two conditions are satisfied. 820 ILCS 320/10 (West 2012); *Village of Vernon Hills v. Heelan*, 2014 IL App (2d) 130823, ¶ 18. First, the officer must have suffered a catastrophic injury in the line of duty. 820 ILCS 320/10(a) (West 2012). Second, the injury must have occurred as the result of the officer's response to fresh pursuit or the officer's response to what is reasonably believed to be an emergency, an unlawful act perpetrated by another, or during the investigation of a criminal act. 820 ILCS 320/10(b) (West 2012). The officer must satisfy both of these requirements to be entitled to benefits. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶¶ 53-57.

¶ 9     The Act does not define the term "catastrophic injury." However, our supreme court has concluded that the phrase "catastrophic injury" as used in the Act is synonymous with an injury resulting in the awarding of a line-of-duty disability pension under section 4-110 of the Illinois Pension Code (40 ILCS 5/4-110 (West 2012)). *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 400 (2003); see also *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 12.

¶ 10    In the present case, the circuit court determined that the plaintiff had not suffered a catastrophic injury because the Board had terminated the plaintiff's line-of-duty pension benefits. However, subsequent to the circuit court's decision, this court reinstated the plaintiff's pension benefits on the basis that the plaintiff was denied procedural due process where he was not given notice and an opportunity to be heard before the Board had terminated those benefits. Therefore, the circuit court's reasoning for denying health insurance benefits under the Act to the plaintiff is no longer applicable. The Board

acknowledges in its brief that the plaintiff's injury is "arguably 'catastrophic' " because the plaintiff's pension benefits were reinstated. Although we recognize that the plaintiff's line-of-duty pension disability benefits could again be terminated by the Board, which could affect his eligibility for health insurance coverage under section 10 of the Act, we conclude, consistent with *Krohe* and *Nowak*, that the plaintiff has suffered a "catastrophic injury" within the meaning of section 10(a) of the Act because he is currently receiving a disability pension for his work-related injury.

¶ 11     The remaining issue, therefore, is whether the injury occurred as the result of one of the circumstances set forth in section 10(b) of the Act. As previously explained, section 10(b) of the Act requires that the catastrophic injury must have occurred as a result of the officer's response to fresh pursuit, the officer's response to what is reasonably believed to be an emergency, an unlawful act perpetrated by another, or during the investigation of a criminal act. 820 ILCS 320/10(b) (West 2012). The plaintiff argues that his injury falls under the following two circumstances: the injury occurred as a result of the officer's response to what is reasonably believed to be an emergency and as the result of the officer's response during the investigation of a criminal act.

¶ 12     We find that the facts establish that the plaintiff's work-related injury occurred as a result of his response to what he reasonably believed was an emergency. A summation of the cases further defining "emergency" as used in section 10(b) of the Act is necessary for our disposition. In *Gaffney*, our supreme court defined the term "emergency" as it appears in section 10(b) of the Act as "an unforeseen circumstance involving imminent danger to a person or property requiring an urgent response." 2012 IL 110012, ¶ 64. The

6

supreme court considered in *Gaffney* in two consolidated appeals whether two firefighters making claims under section 10 of the Act were injured as a result of their response to what they reasonably believed was an emergency. *Id.* ¶¶ 51, 71. The court concluded that, under the undisputed facts, the "emergency" component of section 10 was met in Gaffney's case, but not in the other firefighter's, Lemmenes's, case. *Id.* ¶¶ 69, 79.

¶ 13 Gaffney was injured during a training exercise involving a fire on the third floor of a building. He wore full fire gear for the exercise, and he was instructed to treat the exercise as an actual emergency. The fire hose became stuck on a piece of furniture as the crew was moving it between the second and third floors of the building. Gaffney followed the hose back down to the second floor and found that it was hooked around a loveseat. Gaffney injured his shoulder moving the loveseat. *Id.* ¶¶ 6-8. The supreme court concluded that the training exercise became an emergency when the hose became stuck on the furniture, which was an unforeseen event. The court concluded that this unforeseen event created an imminent danger and required an urgent response as the rest of the crew was stranded on the stairwell with no visibility and without any water to extinguish the fire. Furthermore, the court held that when Gaffney returned to the second floor to free the hose, he had put himself in danger of being lost and disoriented in the smoke-filled building. *Id.* ¶¶ 66-67.

¶ 14 Lemmenes was also a firefighter who was injured during a training exercise. This training exercise occurred in an abandoned building, and the firefighters were required to wear full fire gear. There was no actual fire during the exercise, but the firefighters' masks were blackened to simulate live fire conditions, and they were instructed to act as

7

if the training were an actual emergency. The firefighters were told that a fellow firefighter was trapped inside the building, was running out of air, and would die if not rescued. A fire department supervisor testified that the individual acting as the trapped firefighter was never in any real danger during the exercise. Lemmenes was injured when he attempted to free the trapped firefighter. *Id.* ¶¶ 21-24. The supreme court held that Lemmenes could not have reasonably believed that he was responding to an "emergency" under section 10(b) of the Act where the exercise was conducted under controlled conditions, no one was in any imminent danger at any point during the exercise, and no unexpected or unforeseen developments arose during the training. *Id.* ¶¶ 77-78.

¶ 15 The following appellate court cases have further interpreted the "emergency" requirement under section 10(b) of the Act and the supreme court's decision in *Gaffney*. First, in *Springborn v. Village of Sugar Grove*, 2013 IL App (2d) 120861, ¶ 4, the appellate court considered in consolidated appeals whether two police officers making claims under section 10 of the Act reasonably believed that they were responding to emergencies. Springborn had observed asphalt debris on a highway, activated his emergency lights, parked behind the pieces of asphalt, and injured his back while clearing the road. *Id.* ¶¶ 8-10. Cecala, the other police officer, parked his police vehicle behind a fallen traffic signal pole in the west southbound lane of a highway. He was injured while he and another officer were attempting to move the traffic signal off the roadway. *Id.* ¶¶ 15-19. Relying on *Gaffney*, the court concluded that both officers reasonably believed that they were responding to emergencies. The court held that the roadway obstructions

8

involved imminent danger to a person or property requiring an urgent response, finding that the officers believed that they were facing emergencies and that the officers' subjective beliefs about the presence of an emergency was reasonable. *Id.* ¶¶ 34, 36. The court rejected the argument that a roadway obstruction was not an unforeseen circumstance given the officers' prior experience with roadway obstructions, noting that "an event is no less dire if it falls within the kinds of events that police officers ought to anticipate encountering in their daily duties." *Id.* ¶ 36.

¶ 16 Another appellate court case interpreting *Gaffney* is *Pedersen v. Village of Hoffman Estates*, 2014 IL App (1st) 123402. *Pedersen* involved a firefighter who had responded to a call regarding a tanker truck fire on an Illinois toll road. After the fire was extinguished, Pedersen was retrieving safety triangles from near the tanker truck and was within feet of the fire engine when the siren was inadvertently and unexpectedly activated. Consequently, Pedersen's hearing was damaged and he was ultimately unable to continue working. *Id.* ¶¶ 4-9. The court found that these circumstances fell within the scope of section 10(b) of the Act in that the firefighter's injury occurred as a result of a response to what he reasonably believed to be an emergency situation. The court concluded that it was reasonable to believe that the emergency was ongoing and the scene remained dangerous. *Id.* ¶ 60.

¶ 17 In the present case, the City argues that the facts did not establish that the plaintiff's injury was incurred as a result of his response to what he reasonably believed to be an emergency. Specifically, the City argues that there was no evidence that the reason for the call was an emergency situation which involved imminent danger to a person or

9

property that required an urgent response. The City argues that the plaintiff's interpretation of the term "emergency" as used in section 10(b) of the Act "reads the 'emergency' requirement" out of the Act as any officer injured while answering a dispatch call would be entitled to health insurance coverage regardless of whether the call involved an unforeseen circumstance that involved imminent danger to a person or property requiring an urgent response. The City explains that this interpretation assumes that "receipt of any active duty call, even one to tell the officer that they are authorized to take a break, would constitute an emergency."

¶ 18 Applying *Gaffney* and its progeny to the undisputed facts of this case, we find that the plaintiff is entitled to benefits under section 10 of the Act. The stipulated facts revealed that the plaintiff was on duty as a patrolman when he was stopped by a motorist who asked for directions. He exited his patrol car in order to assist the motorist. While outside his vehicle, he received a call from dispatch over his police radio. His affidavit indicated that he was equipped with a portable radio, but that the radio was not turned on. Because he was in close proximity to his patrol car, he returned to the vehicle to answer the call and suffered his work-related injury.

¶ 19 The plaintiff's affidavit indicated that a call from dispatch was one means in which the officers are notified of an emergency. Although we recognize that there was no evidence presented that this dispatch call resulted in an emergency situation, it is an officer's duty to respond to dispatch calls in a timely manner and be prepared for any eventuality. An officer cannot know the nature of the call until he responds. Therefore, until the officer is able to eliminate the possibility that the dispatch call is an emergency,

10

the officer treats the call as if it were such. Like *Springborn*, the circumstances surrounding the plaintiff's injury are no less dire because it fell within the kinds of events that police officers anticipate encountering in their daily duties. The evidence established that the plaintiff was engaged in the act of responding to what he believed was a potential emergency that could have, based on the fact that a radio call from dispatch was a means of communication concerning an emergency situation, involved imminent danger to a person or property and therefore required an urgent response. Accordingly, we conclude that these facts establish that the plaintiff's injury was incurred as a result of his response to what he reasonably believed was an emergency.

¶ 20    For the foregoing reasons, we reverse the judgment of the circuit court of Jackson County and remand for further proceedings consistent with this decision.


¶ 21    Reversed and remanded.

11

2015 IL App (5th) 140122

NO. 5-14-0122

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| JEFFREY W. VAUGHN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 12-MR-172 |
| | ) | |
| THE CITY OF CARBONDALE, | ) | Honorable |
| | ) | Kimberly L. Dahlen, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

**Opinion Filed:**     March 25, 2015

_____

**Justices:**     Honorable Thomas M. Welch, J.

           Honorable Judy L. Cates, P.J., and
           Honorable Richard P. Goldenhersh, J.,
           Concur

_____

**Attorney**     Patrick T. Sharpe, Maurizio & Sharpe, 1508 West Main Street,
**for**         P.O. Box 1849, Marion, IL 62959
**Appellant**

_____

**Attorney**     P. Michael Kimmel, City Attorney, City of Carbondale, 200 South
**for**         Illinois Avenue, P.O. Box 2047, Carbondale, IL 62902
**Appellee**

_____