2016 IL App (1st) 153613
No. 1-15-3613

FIRST DIVISION
September 21, 2016

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| MICHAEL W. UNDERWOOD, JOSEPH M. VUICH, RAYMOND SCACCHITTI, ROBERT McNULTY, JOHN E. DORN, WILLIAM J. SELKE, JANIECE R. ARCHER, DENNIS MUSHOL, RICHARD AGUINAGA, JAMES SANDOW, CATHERINE A. SANDOW, MARIE JOHNSTON, and 338 other Named Plaintiffs listed, | ) ) ) ) ) ) ) ) |
| Plaintiffs-Appellants, | ) |
| v. | ) ) |
| CITY OF CHICAGO, a Municipal Corporation, | ) ) |
| Defendant, | ) |
| and | ) ) |
| TRUSTEES OF THE POLICEMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO; TRUSTEES OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO; TRUSTEES OF THE MUNICIPAL EMPLOYEES' ANNUITY AND BENEFIT FUND OF CHICAGO; and TRUSTEES OF THE LABORERS & RETIREMENT BOARD EMPLOYEES' ANNUITY & BENEFIT FUND OF CHICAGO, et al., | ) ) ) ) ) ) ) ) ) ) |
| Defendants-Appellees. | ) |

JUSTICE SIMON delivered the judgment of the court, with opinion.
Presiding Justice Connors and Justice Harris concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal is taken from the denial of a motion for a preliminary injunction. The case

stems from the City of Chicago's plan to phase out the healthcare benefits it offers to its employees. The trial court held that one category of plaintiffs did not have a clearly ascertainable right in need of protection. The court then ruled that the other category of plaintiffs had some rights given by statute, but that the medical care plan offered by the City for 2016 was not a diminution in their benefits. We affirm.

¶ 2                                    BACKGROUND

¶ 3     The General Assembly created four pension funds for City employees in order to administer and carry out the provisions of the Illinois Pension Code ("Pension Code"): 1) the Policemen's Annuity Benefit Fund ("Police"); 2) the Firemen's Annuity Benefit Fund ("Fire"); 3) the Municipal Employees' Annuity Benefit Fund ("Municipal"), and 4) the Laborer's and Retirement Board Employees' Annuity Benefit Fund ("Laborers") (collectively "Funds"). The Funds' obligations to their annuitants under the Pension Code are financed by the taxpayers of the City through a tax levy. 40 ILCS 5/5-168 (West 2013).

¶ 4     In 1983, the General Assembly amended the Pension Code to require the Fire and Police Funds to contract with one or more insurance carriers to provide group health care coverage for their retirees. Ill Rev. Stat 1983, Ch. 108-1/2, par. 8-164.1 (eff. Jan.12 1983). The 1983 amendments also required the Funds to pay the premiums for such health insurance for each annuitant "up to a maximum of $55 per month if the annuitant is not qualified to receive Medicare benefits, or up to a maximum of $21 per month if the annuitant is qualified to receive Medicare benefits." Ill Rev. Stat 1983, Ch. 108-1/2, par. 8-167.5 (eff. Jan.12 1983). If the payments made by the Funds did not cover an annuitant's health care premium, the Funds were to deduct the additional cost from the annuitant's monthly pension payment. *Id*.

¶ 5     In 1985, the General Assembly amended the Pension Code to require the Municipal and

2

the Laborers Funds to pay up to $25 per month toward the health care premiums of each annuitant age 65 or older with at least 15 years of experience. Ill Rev. Stat 1985, Ch. 108-1/2, par. 11-160.1 (eff. Aug. 16, 1985). If the monthly premium for such coverage exceeded the $25 per month, the Funds would deduct that amount from the retiree's monthly pension payment. *Id.*

¶ 6    In 1987, the City notified the Funds that it intended to cease making healthcare payments to the Funds' retirees no later than January 1, 1988. On October 19, 1987, the City filed suit seeking a declaration that it had no obligation to provide health care to retirees and to recover the money it had spent over the previous years. *City of Chicago v. Korshak*, No. 87 CH 10134 (Cir. Ct. Cook Cty.). The Funds counterclaimed for declaratory relief seeking to compel the City to continue healthcare coverage for the Funds' retirees. Two group of retirees intervened in the litigation: employees who retired on or before December 31, 1987, were certified as the "Korshak sub-class" and employees who retired after December 31, 1987, but before August 23, 1989 were certified as the "Window sub-class."

¶ 7    The issues in the Korshak litigation were never judicially resolved. Instead, in 1988, the parties entered into a settlement agreement which was subsequently codified through amendments to the Pension Code. The amendments specifically stated that the obligations set forth "shall terminate on December 31, 1997." 40 ILCS 5/167.5 (d) (as amended by P.A. 86-273, § 1, eff. Aug. 23, 1989). The amendments provided that between January 1, 1988, until December 31, 1992, the Funds "shall pay to the City on behalf of each of the Board's annuitants the following amounts: up to a maximum if $65 per month for each annuitant who is not qualified to receive Medicare benefits, and up to a maximum of $35 per month for each annuitant who is not qualified to receive Medicare benefits." *Id.* Next, from January 1, 1993, through December 31, 1997, the Funds would pay "up to a maximum if $75 per month for each

annuitant who is not qualified to receive Medicare benefits, and up to a maximum of $45 per month for each annuitant who is not qualified to receive Medicare benefits." *Id*. The amendments also required the City to pay 50% of the cost of the annuitants' health care coverage through 1997, and required the annuitants to make the payments for the remaining portion of their premiums. 40 ILCS 5/167.5(c) (as amended by P.A. 86-273, § 1, eff. Aug. 23, 1989).

¶ 8 In June 1997, before the expiration of the initial settlement period, the parties entered into a new settlement agreement which extended the settlement period until June 30, 2002. The new settlement was again codified by amendments to the Pension Code. The amendments provided that the Funds were required to pay "up to a maximum of $75 per month for each annuitant who is not qualified to receive Medicare benefits, and up to a maximum of $45 per month for each annuitant who is qualified to receive Medicare benefits." 40 ILCS 5/167.5(c) (as amended by P.A. 90-32, § 5, eff. June 27, 1997). The City was required to pay 50% of the cost of the annuitants' health care coverage. The amendments stated that the obligations would terminate on June 30, 2002.

¶ 9 In April 2003, the parties entered into a third settlement agreement extending the settlement period until June 30, 2013. The Pension Code was accordingly amended to codify the terms of the settlement. Pursuant to this amendment the Funds were responsible for payments to the City the following amounts:

"(1) From July 1, 2003 through June 30, 2008, $85 per month for each annuitant who is not eligible to receive Medicare benefits and $55 per month for each such annuitant who is eligible to receive Medicare benefits

(2) From July 1, 2008 through June 30, 2013, $95 per month for each such annuitant who is not eligible to receive Medicare benefits and $65 per month for

each such annuitant who is eligible to receive Medicare benefits."

40 ILCS 5/5-167.5 (b) (as amended by P.A. 93-42, eff. July 1, 2003).

¶ 10    The 2003 settlement agreement created the Retiree Health Care Benefits Commission ("RHBC") that would make recommendations concerning the state of retiree health care benefits, the costs of those benefits, and issues affecting the retirees benefits to be offered after July 1, 2013.  The RHBC was constituted in 2011 with its members drawn from academia and labor union leadership, the fields of municipal finance, health care, health insurance, and business. The RHBC issued its report on January 11, 2013, concluding that continuing the existing healthcare arrangements for the retirees was not viable given the City's financial circumstances, industry trends, and market conditions.

¶ 11    Based on the RHBC's findings and recommendations, the City decided that after the 2003 settlement agreement expired on June 30, 2013, it would gradually reduce and, by 2017, end its coverage of health care benefits for retirees other than those in the Korshak and Window sub-classes.  The City sent annuitants a letter dated May 15, 2013, informing them that the City extended the 2013 existing coverage through December 31, 2013.   The letter stated that the City would continue coverage for the Korshak and Window sub-classes by offering them a health care plan and paying up to 55% of the cost for the plan for life.  The City indicated that, for those who retired on or after August 23, 1989, it would make changes to their existing health care plan, including adjusting premiums and deductibles and modifying benefits, and gradually phase out the plan entirely over a 3-year period.   Starting on January 1, 2014, the City commenced the 3-year phase-out of the prior subsidies of retiree health care for those who retired on and after August 23, 1989.

¶ 12    On July 23, 2013, plaintiffs filed a new action against the City and the trustees of the

Funds. The case was removed to federal court on August 9, 2013. *Underwood v. City of Chicago*, No. 13 C 5687, 2013 WL 6578777 (N.D. Ill. Dec. 13, 2013). Plaintiffs raised the following claims: Count I sought a declaration that any reduction in plaintiffs' healthcare benefits would violate Art. XIII § 5 of the Illinois Constitution (the Pensions Clause); Count II alleged that a reduction of the benefits constituted a breach of contract, Count III asserted that the defendants were estopped from changing and terminating the annuitants' coverage to a level below the highest level of benefit during an annuitant participation in group healthcare benefits; Count IV alleged a claim under 42 U.S.C. § 1983 for deprivation of a property interest, and Count V alleged a violation of the Contract Clause, U.S. Const § 10, cl. 1. The complaint named four putative sub-classes of plaintiffs: 1) the Korshak sub-class (those retiring prior to December 31, 1987), 2) the Window sub-class (those retiring between January 1, 1988, and August 23, 1989), 3) any participant who contributed to any of the four Funds before August 23, 1989, (Sub-Class 3), and 4) any person who was hired after August 23, 1989 (Sub-Class 4).

¶ 13 The City filed a motion to dismiss before the federal district court which was granted. Plaintiffs filed a notice of appeal and then three successive motions asking the Seventh Circuit to enjoin the City's phase-out plan on retiree's health care coverage. All plaintiff's motions for injunctive relief were denied. On February 25, 2015, the Seventh Circuit affirmed the dismissal of plaintiffs' federal claims while the state law claims, counts I, II and III, were remanded to the circuit court. *Underwood v. City of Chicago*, 779 F. 3d 461, 462 (7th Cir. 2015).

¶ 14 Once the case was back in state court, on June 22, 2015, the City moved to dismiss plaintiffs' remaining state law claims pursuant to section 2-619.1 of the Code of Civil Procedure. Before the oral argument on the motion to dismiss, plaintiffs filed an Emergency Motion for Preliminary Injunction on October 1, 2015. That motion sought to enjoin the third step of the

City's three year plan to phase out the City's subsidy for retiree health care. The circuit court denied the motion and, on October 13, 2015, plaintiffs filed a notice of appeal from that order. Subsequently, after an agreement by the parties, plaintiffs withdrew that appeal and that record was transferred to this case.

¶ 15 The circuit court heard oral arguments on defendants' motion to dismiss on November 13, 2015, and then on December 3, 3015, it issued its memorandum and order. The court granted the City's motion to dismiss in part. It dismissed plaintiffs' contract and estoppel counts without prejudice. The court concluded that count I did state a claim under the 1983 and 1985 amendments for those plaintiffs who were hired prior to August 23, 1989 because the 1983 and 1985 amendments were not time limited. The circuit court rejected plaintiffs' arguments for lifetime benefits based upon the 1989, 1997 and 2003 Pension Code amendments which codified the various Korshak settlements holding that these amendments and settlement agreements provided only time-limited benefits.

¶ 16 In a March 3, 2016, Memorandum and Order, addressing the City's motion to clarify or, in the alternative to reconsider the December 3, 2015, ruling, the circuit court clarified that any obligation to provide or subsidize retiree medical benefits was limited to the Funds and did not extend to the City. The circuit court explained that "[t]he City is correct that it does not have any obligation under 1983 and 1985 amendments to subsidize or provide health care for the Funds' annuitants." Instead, the City's only obligation was to continue the pre-existing tax levy imposed by the Pension Code.

¶ 17 On December 10, 2015, plaintiffs filed a Renewed Emergency Motion for Preliminary Injunction seeking to enjoin the City from making its 2016 increases as previously established in the phase-out plan and to preserve the *status quo* pending the resolution of the case on the merits.

Plaintiffs argued that the City's 2016 plan diminished or impaired retirees' health care benefits in violation of the Pension Clause, and created financial hardship for retirees because, among other things, if retirees left the City's 2016 plan due to increased costs posed by that plan, they would not later be able to return to the City's plan without showing proof of good health. Plaintiffs argued that the effect of the City's actions would increase rates "as much as 40%" which they view as a violation of the Pension Code.

¶ 18    The City filed its opposition to the preliminary injunction motion arguing that the plaintiffs could not demonstrate either that they would be harmed or that their benefits would be diminished in violation of the Pension Clause. The City claimed that plaintiffs would be better off under the 2016 plan because they receive a greater premium subsidy than they would have received under the 1983 and 1985 statutes. The City also argued and presented evidence that there were other health care plans available for all retirees including non-Medicare eligible retirees that had lower-cost premiums than retirees could obtain through the City's 2015 previous plan.

¶ 19    After a hearing on December 23, 2015, the trial court denied plaintiffs' motion for injunctive relief finding that plaintiffs had not shown three of the required elements for such relief: an ascertainable claim for relief, a likelihood of success on the merits, and an inadequate remedy at law. The trial court held that plaintiffs who were hired after August 23, 1989 had no ascertainable claim for relief because the 1989, 1997, and 2003 settlement agreements and the Pension Code amendments codifying those agreements provided only time-limited health care benefits that had expired. The court noted that the other sub-classes, the Korshak, Window and sub-class three, while they had an ascertainable claim for relief under the 1983 and 1985 amendments, they could not establish a likelihood of success on the merits because the benefits

that would have been available under those statutes are less than under the City's 2016 plan. The court also concluded that plaintiffs could not show that they lacked an adequate remedy at law. This appeal followed. We note that the instant appeal concerns solely the circuit court's ruling on the preliminary injunction regarding the 2016 increases.

¶ 20                                     ANALYSIS

¶ 21    On appeal, plaintiffs argue that the trial court erred in denying their motion for preliminary injunctive relief. A preliminary injunction is an extraordinary relief and will only be granted where a plaintiff shows: (1) that he has a clearly ascertainable right that needs protection, (2) that he will suffer irreparable harm without the protection, (3) that he has no adequate remedy at law, and (4) that he is likely to succeed on the merits. *Postma v. Jack Brown Buick, Inc.*, 157 Ill. 2d 391, 399 (1993). A decision to grant or deny a preliminary injunction is generally reviewed for an abuse of discretion. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62 (2006). The party looking for injunctive relief has to establish all four elements by a preponderance of the evidence. *Gastroenterology Consultants of N. Shore, S.C. v. Meiselman*, 2013 IL App (1st) 123692, ¶ 9.

¶ 22    Here, the trial court did not abuse its discretion when it denied plaintiffs' motion for injunctive relief. The trial court properly held that plaintiffs hired after August 23, 1989 (Sub-Class 4), did not have an ascertainable right to health care benefits. The Illinois Constitution provides that "membership in any pension or retirement system of the State, any unit of local government . . . shall be an enforceable contractual relationship, the benefit of which shall not be diminished or impaired." Ill. Const. 1970, art. XIII, § 5. The Pension Code does not by itself confer those benefits. Instead, the benefits are created by contract or by statute. But, the legislature can impose conditions, including time limitations on statutorily created rights. See *In*

*re Petition for Detachment of Land from Morrison Cmty. Hosp. Dist.*, 318 Ill. App. 3d 922, 930 (2000) (the legislature may incorporate expiration dates on privileges it grants).

¶ 23    The 1989, 1997, and 2003 Pension Code amendments codifying the settlement agreements between the parties provided only time-limited health care benefits, all of which expired by 2013. Because all these amendments were expressly time-limited, they could not create and give plaintiffs rights beyond what the legislature afforded.  Therefore, sub-class 4 has no ascertainable claims to lifetime health care benefits, and it was not an abuse of discretion to deny them preliminary injunctive relief.

¶ 24    The trial court also correctly determined that the rest of the plaintiffs could not demonstrate a likelihood of success on the merits of their Pension Clause claim concerning the other two statutes, the 1983 and 1985 Pension Code amendments.  The 1983 and 1985 Pension Code amendments were not time limited.  So this was the primary issue for the trial court to decide: have the retirees made a sufficient showing that the 2016 version of the plan diminishes or impairs what they are entitled to under the 1983 and 1985 amendments.  And, following the hearing on the preliminary injunction and based on all of the evidence submitted, the circuit court determined that the City's 2016 plan did not diminish or impair the benefits that were set forth in the 1983 and 1985 amendments.

¶ 25    The record amply supports the trial court's determination. The retirees received greater health care subsidies under the City's 2016 plan than what they received under the 1983 and 1985 amendments.  Under the 1983 and 1985 amendments, the maximum amount that the Funds were required to pay for its annuitants was $21 or $55 per month for the Police and Fire retirees, and $25 per month for Municipal and Labor retirees if they satisfied the Pension Code's eligibility requirements.  Neither the 1983 or 1985 amendment provided for any increase in these

monthly subsidies nor did they provide for fixed premiums. In addition, under these amendments, retirees were responsible for the difference between the required monthly premiums and the Funds' monthly subsidies. In contrast, under the City's 2016 plan, Medicare-eligible retirees receive monthly premium subsidies raging from $65 to $159 and non-Medicare eligible retirees receive monthly premium subsidies between $95 to $399.

¶ 26    The trial court heard all the evidence. It analyzed the 2016 plan as compared to what it found the retirees were entitled to under the amendments. The court discussed the possibility that the retirees were actually better off under the 2016 plan. Its finding that the retirees failed to demonstrate that they had a likelihood of succeeding on the merits for a claim that the 2016 plan was a diminishment of anything that they were entitled to was not an abuse of discretion.

¶ 27    Plaintiffs believe that the trial court ignored our supreme court's holding in *Kenerva v. Weems*, 2014 IL 115811—that there is a presumption in favor of pensioners and that the Pension Code is not restricted to protecting what is provided therein. But, again, the relevant constitutional provision and case law do not create benefits—they protect them. In *Kanerva*, the benefit recipients already had the enduring right. *Id.* at ¶ 57. The Court just explained that, based on our constitution, it could not be taken away. *Id*. at ¶ 42. But here, the benefit always came with an expiration date. The time period was part of the benefit itself. The only enduring rights that these retirees ever contracted for or were successfully able to get adopted by the legislature are those codified in the 1983 and 1985 amendments. The retirees know, because they have now negotiated and settled with the City several times, that they had a ten-year plan in place to cover their healthcare benefits. But at this preliminary stage, they have not demonstrated a likelihood of succeeding on the merits for a constitutional claim to lifetime healthcare benefits.

11

¶ 28    The retirees also refer us to the City Annuitant's Handbook and maintain that they have rights based on that. But the handbook does not state that the retirees are entitled to lifelong medical benefits. In fact, the book refers several times to the idea that the plan will at some time terminate. The trial court likewise did not abuse its discretion in refusing to grant a preliminary injunction on the basis of a contract claim.

¶ 29    The retirees claim that they are entitled to continued benefits based on the fact that they were told that they would have lifetime healthcare by the City. They point to retirement seminars and other supposed communications where they were allegedly informed that their healthcare would be taken care of. In order to apply equitable estoppel against a municipality, a plaintiff must plead specific facts that show: (1) an affirmative act by either the municipality itself or an official with express authority to bind the municipality; and (2) reasonable reliance upon that act by the plaintiff that induces the plaintiff to detrimentally change its position. *Vaughn v. City of Carbondale*, 2016 IL 119181, ¶ 48. The usual elements of estoppel are further supplemented with the additional restriction that a public body will be estopped only when necessary to prevent fraud or injustice, particularly when public revenues are involved. *Id*. Perhaps the retirees can meet their burden on a claim of this nature at trial, but they have not done so here. At this stage they have not shown that they can overcome the statute of frauds nor have they shown any express act by the City or any authorized representative to bind itself to such a commitment. They have not even produced evidence from a witness who might have heard these promises.

¶ 30    Insofar as the 2016 plan is concerned, the trial court did not abuse its discretion in denying the extraordinary relief that is a preliminary injunction. The retirees did not make a sufficient showing that they have a clear right to anything other than what is in the 1983 and

1985 amendments. That being so, the trial court reviewed the 2016 plan side by side with what is provided for in the amendments, compared them, and exercised its discretion to determine that the 2016 plan did not constitute any diminishment of the benefit the retirees are entitled to.

¶ 31                                                CONCLUSION

¶ 32    Accordingly, we affirm.

¶ 33    Affirmed.